UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

PELEUS INSURANCE COMPANY,

                Plaintiff,

- against -

HP BUILDING MANAGEMENT INC.,

                Defendant.

---

Civil Action No. 1:24-cv-1150

**COMPLAINT**

Plaintiff Peleus Insurance Company ("Peleus"), by its attorneys Traub Lieberman Straus & Shrewsberry LLP, for its Complaint for Declaratory Judgment against defendants, states as follows:

## NATURE OF ACTION, JURISDICTION AND PARTIES

1. This action is brought under Section 1332 of Title 28, United States Code, seeking this Court's determination concerning the respective rights and obligations of the parties under an insurance policy issued by Peleus Insurance Company ("Peleus") to defendant HP Building Management Inc. ("HP Building"), including a declaration that Peleus has no obligation to defend or indemnify HP Building in an underlying lawsuit.

2. Peleus is a Virginia corporation, with a principal place of business in Chicago, Illinois.

3. HP Building is a New York corporation with its principal place of business in Queens, New York.

4. The amount in controversy exceeds the sum or value of Seventy Five Thousand ($75,000) Dollars exclusive of interest and costs.

5. This is an action between citizens of different states and diversity jurisdiction is proper pursuant to 28 U.S.C. §1332.

6. Venue is proper under 28 U.S.C. §1391 as one or more defendants reside in this judicial district or a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

7. This is a case or controversy involving a policy issued in this judicial district sufficient to permit a declaratory judgment under 28 U.S.C. §2201.

## BACKGROUND FACTS

### Underlying Action

8. On or about June 30, 2022 Ivan Castillo Urena commenced an action in the Supreme Court of the State of New York, County of Queens entitled, *Ivan Castillo Urena v. BSD Warwick 28 LLC and HP Building Management Inc.*, Index Number 702047/2023 (the "Urena Action"*).* A copy of the complaint in the Urena Action is annexed hereto as Exhibit A.

9. In the Urena Action, plaintiff seeks recovery for injuries allegedly sustained on April 2, 2022 while walking on the sidewalk "leading to" 283 Warwick Avenue, Brooklyn, New York (the "Premises"). Ex. A at ¶20.

10. Plaintiff in the Urena Action alleges that his injuries were caused by the negligence, carelessness and recklessness of the defendants in that action. Ex. A at ¶19.

11. At the time of the incident alleged in the Underlying Action, a construction project was underway on the premises.

12. HP Building was the general contractor for the construction project on the premises at all times relevant to this action.

13. HP Building provided construction services on the Premises at all times relevant to this action.

14. HP Building and BPM Construction LLC ("BPM") entered a contract, pursuant to which BPM would perform specified construction work as a subcontractor on the Premises ("the BPM Contract"). Exhibit B.

15. Peleus was first provided with a copy of the BPM Contract on November 29, 2023.

16. The BPM Contract identifies HP Building as "Contractor" and BPM as "Subcontractor."

17. The only indemnification provision in the BPM Contract states that "Contractor [HP Building] shall provide for the Owner (sic) indemnification and status as an Additional Insured on General Liability and Worker's Compensation Insurance which shall be primary and non-contributing to any insurance available to Contractors [HP Building] or Property Owner. The extent of this coverage shall not be less than $1,000.00 aggregate coverage." Exhibit B

18. The BPM Contract does not require that BPM defend, indemnify and hold HP Building harmless to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any BPM. Exhibit B at 3.

19. The BPM Contract does not require that BPM name HP Building as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of HP Building. Exhibit B at 3.

20. In correspondence dated November 29, 2023, Peleus advised HP Building that it was not entitled to defense or indemnify coverage for the Urena Action under the Peleus Policy due to HP Building's failure to comply with the terms, conditions and exclusions of the Peleus Policy. Exhibit C.

**The Peleus Policy**

21. Peleus issued Commercial General Liability policy 600 GL 0033450-02 to HP Building for the policy period March 30, 2022 to March 30, 2023 (the "Peleus Policy"). A copy of the Peleus policy is annexed hereto as Exhibit D.

22. The Insuring Agreement to the Peleus Policy provides, in pertinent part, as follows:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and
>
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

Exhibit D at 10 of 79.

23. The Peleus Policy contains the following endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

-4-

**CONTRACTOR WARRANTY – SPLIT SCHEDULE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULES

| **SCHEDULE A** |
| --- |
| **No Coverage Applies If Contractor Conditions Not Met** |
| **Description of Designated Operation(s):** |
| All work, activities, or operations involving any of the following: land excavation, building foundation construction, load bearing beam installation, load bearing beam removal, structural steel installation, structural steel removal, elevator shaft work, or performed on the exterior of any building or structure. |
| **Specified Location(s):** |
| **Contractor's Commercial General Liability Limits of Insurance Requirements:** |
| Each occurrence Limit: $5,000,000 |
| General Aggregate Limit: $5,000,000 |
| Products/Completed Operations Aggregate Limit: $5,000,000 |

| **SCHEDULE B** |
| --- |
| **No Coverage Applies If Contractor Conditions Not Met** |
| **Contractor's Commercial General Liability Limits of Insurance Requirements:** |
| Each Occurrence Limit: $1,000,000 |
| General Aggregate Limit: $2,000,000 |
| Products/Completed Operations Aggregate Limit: $2,000,000 |

A. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended by the addition of the following:

   1. **No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE **A** above applies)

   We will have no duty to defend or indemnify any insured if prior to the commencement of any work the insured fails to satisfy all conditions precedent to coverage set forth below with respect to the designated operations described and locations specified in SCHEDULE A above. The insured agrees that we need not

-5-

demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed::

a. The "contractor" has signed and executed an agreement with the insured which remains in force and effect until the date on which the work is completed and contains the following provisions:

   (1) An agreement to defend, indemnify, and hold the insured harmless, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and

   (2) A requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of the insured;

b. The "contractor" has maintained "adequate insurance";

c. The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and

d. All documents required must be kept on file and made available upon request.

2. **No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE **B** above applies)

   We will have no duty to defend or indemnify any insured if prior to the commencement of any work the insured fails to satisfy all conditions precedent to coverage set forth below with respect to all operations and locations not described or specified in SCHEDULE A above. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

   The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed:

   a. The "contractor" has signed and executed an agreement with the insured which remains in force and effect until the

        date on which the work is completed and contains the following provisions:

        **(1)** An agreement to defend, indemnify, and hold the insured harmless, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and

        **(2)** A requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of the insured.

    **b.** The "contractor" has maintained "adequate insurance";

    **c.** The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and

    **d.** All documents required must be kept on file and made available at our request.

B.    As used in this endorsement, **SECTION V - DEFINITIONS** is amended to include the following:

1. "Adequate insurance" means Commercial General Liability Insurance, Workers' Compensation and Employer's Liability Insurance written by an insurance carrier(s) with an A.M. Best rating that is not less than A-VII and which:

    **a.** Remains in full force and effect without a lapse in coverage from the date on which the contract for work being performed for the insured or on the insured's behalf is executed until the date on which the work is completed;

    **b.** Provides Commercial General Liability Limits of Insurance for such operations that are equal to or greater than the Limits of Insurance indicated in SCHEDULE **A** and **B** above;

    **c.** Provides Workers' Compensation and Employer's Liability Insurance in compliance with the statutes of the applicable state;

    **d.** Includes coverage for "bodily injury" or "property damage" arising out of work performed by the "contractor" or on behalf of the "contractor" per the agreement with the insured;

    **e.** Does not exclude any claim, "suit", loss, cost or expense arising out of any "bodily injury" to any "worker" of the "contractor"; and

  **f.** Does not contain any conditions or provisions that preclude coverage based on requirements for hiring or contracting with subcontractors or independent contractors.

2. "Contractor" means contractors, subcontractors, independent contractors or any other person or entity hired to perform work for the insured or on the insured's behalf.

3. "Worker" means any "employee", "temporary worker", "leased worker", "volunteer worker", apprentice, intern, casual laborer, borrowed employee, borrowed servant, independent contractor or subcontractor, or any person hired or retained by them, that performs work, whether directly or indirectly, for any "contractor".

  ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Exhibit D at 92-92 of 98.

**The Contracts**

  24. Article 7. Insurance of the BPM Contract provides as follows:

The Contractor will maintain, at Contractor's cost and if applicable require Subcontractor to maintain, at Sub-Contractor's Cost, the following insurance coverage:

• Workers Compensation Insurance and Liability Insurance according to applicable state laws for claims for damages because of bodily injuries, including death, to his or Subcontractor's employees and all others, and from claims for damage to property, any or all of which may arise out of result from Contractor's and Sub-contractor's operations under this contract, whether such operations be by Contractor or Sub-contractor.

• Contractor shall provide for the Owner indemnification and status as Additional Insured on General Liability and Worker's Compensation Insurance which shall be primary and non-contributing to any insurance available to the Contractors or Property Owner. The extent of this coverage shall not be less than $1,000.00 aggregate coverage.

Exhibit B at 3.

## FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

25. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "24" of the complaint as if fully set forth herein at length.

26. There is no coverage under the Peleus Policy if the requirements of the Contractor Warranty—Split Schedule endorsement are not satisfied by the insured.

27. Pursuant to the Contractor Warranty—Split Schedule endorsement, no insured is entitled to a defense or indemnity under the Peleus Policy if the insured enters into an agreement with a "contractor," as that term is defined in the Peleus Policy, and the contract does not contain "an agreement to defend, indemnify, and hold the insured harmless, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such 'contractor', including all expenses and legal fees incurred to defend claims alleging such losses."

28. Pursuant to the Contractor Warranty—Split Schedule endorsement, no insured is entitled to a defense or indemnity under the Peleus Policy if the insured enters into an agreement with a "contractor," as that term is defined in the Peleus Policy, and the contract does not contain "a requirement for the 'contractor' to name the insured as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of the insured and the "contractor" does not maintain "adequate insurance," as that term is defined in the Peleus Policy."

29. The BPM Contract does not contain an agreement for BPM to defend, indemnify, and hold HP Building harmless, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of BPM, including all expenses and legal fees incurred to defend claims alleging such losses.

30. The BPM Contract does not contain an agreement for BPM to name HP Building as an Additional Insured under BPM's Commercial General Liability policy on a primary and non-contributory basis in favor of HP Building.

31. As a result of the foregoing deficiencies in the BPM Contract, HP Building has not satisfied the requirements set forth in the Contractor Warranty – Split Schedule.

32. As a result of HP Building's failure to satisfy the foregoing requirements of the Contractor Warranty – Split Schedule, HP Building is not entitled to defense or indemnity coverage under the Peleus Policy with respect to the Urena Action under the Peleus Policy

33. Based on the foregoing, Peleus has no duty to defend HP Building, or any person or entity seeking coverage under the Peleus Policy, in the Urena Action, and Peleus seeks a declaratory judgment to that effect.

34. Based on the foregoing, Peleus has no duty to indemnify HP Building, or any person or entity seeking coverage under the Peleus Policy, in the Urena Action and Peleus seeks a declaratory judgment to that effect.

**WHEREFORE**, plaintiff demands judgment as follows:

a.  A declaration that Peleus does not owe a duty to defend HP Building, or any person or entity seeking coverage under the Peleus Policy, in the Urena Action;

b.  A declaration that Peleus does not owe a duty to indemnify HP Building, or any person or entity seeking coverage under the Peleus Policy, for the Urena Action;

c.  Such other relief as the Court deems proper, together with reasonable attorney's fees, costs and disbursements in this action.

Dated: Hawthorne, New York
       February 14, 2024

**TRAUB LIEBERMAN STRAUS
 & SHREWSBERRY LLP**
*Attorneys for Plaintiff Peleus Insurance Company*

By: *Jonathan R. Harwood*
Jonathan R. Harwood
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600

-11-